# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| LINDSAY WARD, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CASE NO. 6:19-CV-00337-DTG** |
| | § | |
| TEXAS FARM BUREAU, TEXAS FARM | § | |
| BUREAU BUSINESS CORPORATION, | § | |
| TEXAS FARM BUREAU CASUALTY | § | |
| INSURANCE COMPANY, TEXAS FARM | § | |
| BUREAU MUTUAL INSURANCE | § | |
| COMPANY, TEXAS FARM BUREAU | § | |
| UNDERWRITERS, FARM BUREAU | § | |
| COUNTY MUTUAL INSURANCE | § | |
| COMPANY OF TEXAS, SOUTHERN | § | |
| FARM BUREAU LIFE INSURANCE | § | |
| COMPANY, SLOAN BROWN, JUSTIN | § | |
| INGRAM, and JON SHARP, | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANTS' MOTION FOR
## JUDGMENT AS A MATTER OF LAW

---

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Defendants[1] jointly move

for judgment as a matter of law on several of Plaintiff Lindsay Ward's claims.

All requirements for judgment as a matter of law have been met.  First, Plaintiff has been

fully heard.  Trial began May 6, 2024, and she rested her case the morning of May 14, 2024, before

this motion was filed.  Second, for each of the issues addressed below, a reasonable jury would

---

[1] Defendants are Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, and Southern Farm Bureau Life Insurance Company.  Because Defendants were often referred to collectively as "Farm Bureau" at trial, this motion sometimes refers to them as "Farm Bureau," too.  Texas Farm Bureau, Texas Farm Bureau Business Corporation, Sloan Brown, Justin Ingram, and Jon Sharp have been dismissed from the case.

not have a legally sufficient evidentiary basis to find for Plaintiff.  Finally, Plaintiff can maintain the following claims and requests for damages, and defeat the following defense, only if she obtains favorable findings.  Specifically, Defendants seek judgment as a matter of law in its favor on the following issues:

- Plaintiff cannot recover punitive damages for her FLSA or *Sabine Pilot* claims;

- Plaintiff cannot recover on her FLSA retaliation claim because:

  o She did not engage in protected activity, and

  o she cannot show but-for causation;

- Plaintiff cannot recover on her *Sabine Pilot* claim because:

  o She was not "required" to engage in an illegal act,

  o She failed to establish any "illegal act," and

  o She cannot show sole causation;

- Plaintiff cannot recover mental anguish damages under federal or Texas law;

- Plaintiff cannot recover lost wages after March 2018 because she failed to mitigate her damages; and

- Plaintiff cannot show willfulness under the FLSA.

## <u>APPLICABLE LEGAL STANDARDS</u>

Rule 50(a) permits the Court to remove the case or issues from the jury's consideration when the facts are clear that the law requires a particular result.  *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000).  Thus, a district court may "grant a motion for judgment as a matter of law in a jury trial before a case is submitted to the jury with respect to a claim" raised by a party in the case if three conditions are met.  *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 494 (5th Cir. 2019).  First, the "party has been fully heard on an issue during [the] trial."  *Id*. (quoting Fed. R. Civ. P. 50(a)).  Second, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis

to find for the party on that issue." *Id.* And third, "under the controlling law, the claim or defense can be maintained or defeated only with a favorable finding on that issue." *Id.* (cleaned up).

In ruling on a motion for judgment as a matter of law, "the court is to inquire whether there is any "legally sufficient evidentiary basis" for a reasonable jury to find for the nonmovant. *Weisgram*, 528 U.S. at 441-42 (quoting Fed. R. Civ. P. 50(a)(1)). While the Court must draw all reasonable inferences in favor of the nonmoving party, a mere scintilla of evidence is insufficient to present a question for the jury. *Rex Real Est. I, L.P. v. Rex Real Est. Exch. Inc.*, 80 F.4th 607, 616 (5th Cir. 2023); *Hunter on Behalf of Hunter v. Knoll Rig & Equipment Mfg. Co.*, 70 F.3d 803, 808 (5th Cir. 1995); *Henderson v. Boise Paper Holdings, LLC*, 2015 WL 6760483, at *1 (W.D. Tex. Nov. 5, 2015). The motion for judgment as a matter of law "should not be decided by which side has the better of the case, nor should [it] be granted only when there is complete absence of probative facts to support a jury verdict. There must be a conflict in ***substantial*** evidence to create a jury question." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997); *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) ("evidence sufficient to support a jury verdict must be *substantial* evidence"). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018). An inference that "would be 'mere speculation and conjecture' ... is not sufficient to support a jury verdict." *Guile*, 422 F.3d at 226 (quoting *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583-84 (5th Cir. 2002)). "In order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of [her] claim." *Anthony*, 284 F.3d at 583.

## ARGUMENT AND AUTHORITIES

### I.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S REQUESTS FOR PUNITIVE DAMAGES.

Defendants are entitled to judgment as a matter of law on Plaintiff's requests for punitive damages for her FLSA retaliation and *Sabine Pilot* claims.  *See* ECF 8, ¶¶ 131(g), (h).

#### A.   FLSA Retaliation Claim

As an initial matter, punitive damages are unavailable for FLSA retaliation claims.  *See* ECF 116 at 12-13 (citing *Dean v. Am. Security Ins. Co.*, 559 F.2d 1036, 1039-40 (5th Cir. 1997) (holding that punitive damages are not available under coextensive ADEA).[2]  Indeed, courts in the Western District of Texas have refused to permit punitive damages in such cases.[3]  This Court should, likewise, decline to award punitive damages here.

Even if punitive damages were available for Plaintiff's FLSA retaliation claim, Defendants would still be entitled to judgment as a matter of law.  For Plaintiff to qualify for punitive damages, she must prove that the Defendants retaliated against her with "malice or with reckless indifference" to her federally protected rights.  *Azkour v. Little Rest Twelve*, 2015 WL 631377, at *10 (S.D.N.Y. Feb. 12, 2015), *aff'd*, 645 F. App'x 98 (2d Cir. 2016).  As the *Azkour* court explained:

> Under this standard, while punitive damages depend on Defendant's knowledge (or reckless indifference), the required knowledge with regard to the retaliatory

---

[2] Citations to documents in the Court record are to the page numbers assigned by CM/ECF in the document's header.  Defendants incorporate their prior briefing on the unavailability of punitive damages for FLSA retaliation claims into this Motion as if fully set forth herein.  *See* ECF 116 at 12-13; ECF 142 at 9-11.

[3] *See Chaves v. Cogent Med. Lab., LLC*, 2020 WL 5096946, at *6 (W.D. Tex. Aug. 28, 2020) (refusing to award punitive damages in Section 215(a)(3) claim); *Tovar v. El Paso Area Teachers Fed. Credit Union*, 2013 WL 12394444, at *2 (W.D. Tex. Aug. 15, 2013) (because the Fifth Circuit has held ADEA and FLSA remedies as coextensive, punitive damages not recoverable in FLSA retaliation cases); *Sanchez v. Shamaley Ford*, 2011 WL 13324287, at *3 (W.D. Tex. Aug. 3, 2011) (same).

termination is ***not* simply a knowledge of a retaliation**.  Rather, the requirement of knowledge or reckless indifference "pertain[s] to the employer's **knowledge that it may be acting in violation of federal law**."  Thus, in order to qualify for punitive damages, Plaintiff here must "present evidence that the employer ... retaliated ... against him with **conscious knowledge it was *violating the law***, or that it engaged in egregious or outrageous conduct from which an inference of malice or reckless indifference could be drawn." … "[I]n the absence of evidence showing that the employer acted with malice or reckless indifference to its employee's federally protected rights, a punitive damages award cannot be sustained."

*Id.* (internal citations omitted; bold emphasis added) (granting defendant's motion for judgment as a matter of law as to punitive damages).  Plaintiff's burden of proof on punitive damages is "formidable."  *Harris v. FedEx Corporate Services, Inc.*, 92 F.4th 286, 302 (5th Cir. 2024) (addressing punitive damages in analogous Title VII context).

Here, Plaintiff presented no evidence that would justify an award of punitive damages against Defendants.  Nothing in the record has even suggested—let alone proven—that any Defendant had any malicious intent with respect to the termination of Plaintiff's contracts or any conscious knowledge it was purportedly retaliating against Plaintiff in violation of federal law.  Plaintiff elicited no evidence from any witness of SFB Life that related to her contract termination.[4] And the ***sole witness*** she called from the TFB Insurance Companies with personal knowledge of the circumstances surrounding her contract termination, Jon Sharp, testified unequivocally that:

- he did not know whether Plaintiff had signed an affidavit at the time her contracts were terminated;

- the affidavit had nothing to do with his decision to recommend termination of Plaintiff's contracts;

- he did not learn that Plaintiff had not signed an affidavit until she filed this lawsuit;

- he did not communicate a threat through Bill Bergman that Plaintiff's contracts would be terminated if she did not sign an affidavit;

---

[4] Plaintiff presented the testimony of David Hurt, SFB Life Vice President of Marketing, by deposition.  Mr. Hurt's testimony was unrelated to the termination of Plaintiff's contracts.

- he was not aware of anyone communicating a threat through Bill Bergman that Plaintiff's contracts would be terminated if she did not sign an affidavit; and

- no other Agency Managers who opted not to sign and return an affidavit have been terminated by Defendants.

Tr. (Day 4) at 169, 261-62.  Mr. Sharp presented numerous legitimate and non-retaliatory reasons for the termination of Plaintiff's contracts with Defendants, including Plaintiff's deteriorated relationship with her local County Farm Bureau board and how her agency was in a state of chaos due to her lack of engagement and leadership.  *See generally* Tr. (Day 4) at 121-221, 190-262.[5] Plaintiff has elicited no evidence that could be construed by a reasonable jury as ***evidence*** that any Defendant had "***conscious knowledge* it was *violating the law*"[6] when terminating Plaintiff's contracts.  *See Harris*, 92 F.4th at 302 (vacating punitive damages award where evidence suggested defendant believed plaintiff should be disciplined for "insubordination," not in retaliation for complaints, noting "it is the employer's subjective intent that matters").

Nor did Plaintiff establish the state of mind necessary to hold Defendants' liable for punitive damages.  Plaintiff maintained she was retaliated against specifically by Jon Sharp, Justin Ingram, and Sloan Brown.  *See* Tr. (Day 3) at 208.  Her ***sole*** reason for this belief was their involvement as in her termination as purported "decision-makers."  *Id.* at 209.  Nothing more. Plaintiff simply presented no evidence that Defendants had any "conscious knowledge" they were "acting in violation of federal law" when they terminated her contracts.

In the absence of any evidence that could support an award of punitive damages by a reasonable jury on Plaintiff's FLSA retaliation claim, the Court should enter judgment as a matter of law for Defendants.

---

[5] The testimony from the other corporate witnesses presented by Defendants—Justin Ingram and Sloan Brown—was consistent with Mr. Sharp's.  *See generally* Tr. (Day 5).
[6] *Azkour*, 2015 WL 631377, at *10 (emphasis added).

B.      *Sabine Pilot* Claim

To recover punitive damages in a *Sabine Pilot* claim, a plaintiff must satisfy the following prerequisites:   (1) a finding of actual damages, and (2) outrageous, malicious, or otherwise reprehensible conduct.   *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655 , 660 (Tex. 2012), *as corrected* (June 8, 2012) (*Safeshred II*) (reversing  punitive damages award because plaintiff failed to present legally sufficient evidence of malice relating to his firing).   "A malice finding" in a *Sabine Pilot* case requires ***more than*** a defendant's "mere intent to fire" an employee.  *Id.* at 662. Likewise, "the employer's illegal directive to the employee (and any malice that might have accompanied that directive) cannot form the basis for a punitive damages award."  *Id.* at 663.

As such, to establish malicious intent or conscious indifference, the employee seeking punitive damages must provide ***clear and convincing evidence*** of "***something independent and qualitatively different*** from the ... compensable harms associated with [the cause of action]."  *Id.* at 661, 663 (internal citations and quotation marks omitted; emphasis added).  Such intent may exist where "the employer circulates false or malicious rumors about the employee before or after the discharge," "actively interferes with the employee's ability to find other employment," or engages in harassment in connection with the discharge, all of which are "a qualitatively different injury from the firing itself, and conscious indifference to a risk of that injury might warrant punitive damages."  *Id.* (internal citations and quotation marks omitted).

Here, not only did Plaintiff admit that ***no one*** told her she was required to return the affidavit on which her *Sabine Pilot* claim is premised, Tr. (Day 3) at 212, her testimony demonstrated a complete lack of malicious intent in connection with the termination of her contracts.  Plaintiff elicited ***no evidence*** that Defendants circulated rumors about Plaintiff before or after her termination; to the contrary, she admitted that Jon Sharp and Justin Ingram explicitly

instructed staff in her office not to gossip about her termination. *Id.* at 57-58. Indeed, that was the companies' "standard practice" when terminating contracts. *Id.* That people "like[ ] to gossip" does not show malice or reckless indifference on Defendants' part. *Id.* 50. Plaintiff likewise elicited ***no evidence*** that any Defendant engaged in harassment in connection with her termination or interfered with her ability to find other employment.

In the absence of any evidence that would satisfy the standard for punitive damages for Plaintiff's *Sabine Pilot* claim, the Court should enter judgment as a matter of law for Defendants.

## II.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FLSA RETALIATION CLAIM.

Plaintiff has alleged that Defendants terminated her contracts because she engaged in activity protected by the FLSA when she "refused to sign" an affidavit for Defendants' use in the *Ferguson* lawsuit. ECF 8 ¶ 99; ECF 222-2 at 4. To succeed on this retaliation claim, Plaintiff must prove that (1) she engaged in activity protected by the FLSA, (2) she suffered an adverse employment action, and (3) her protected activity was the but-for cause of the adverse employment action. 29 U.S.C. § 215(a)(3); *Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008); *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004). Here, as a matter of law, Plaintiff has failed to show that her activity is protected under the FLSA. And she has no, or legally insufficient, evidence on causation. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claim.

### A.    As a matter of law, Plaintiff has not shown she engaged in protected activity.

There are three categories of protected activity under the FLSA:

(i) Filing a complaint or instituting an FLSA proceeding,

(ii) Testifying or being about to testify in an FLSA proceeding,

(iii) Serving or being about to serve on an industry committee.

29 U.S.C. § 215(a)(3).  The third type of protected activity is not at issue in this lawsuit.

Whether certain conduct qualifies as protected activity is a question of law for the Court.[7]

### 1.  Plaintiff did not file a complaint.

For a communication to constitute a "complaint" under 29 U.S.C. § 215(a)(3), it must put the employer on "fair notice" "that an employee is making a complaint that could subject the employer to a later claim of retaliation." *Lasater v. Tex. A&M Univ. Commerce*, 495 Fed. App'x 458, 461 (5th Cir. 2016) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13 (2011)).  The complaint "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the FLSA and a call for their protection." *Lasater*, 495 Fed. App'x at 461 (quoting *Kasten*, 563 U.S. at 14) (cleaned up).  The "fair notice" requirement is designed to ensure that the FLSA's enforcement system, which relies not upon detailed federal supervision but upon employees' speaking up about substandard conditions, is "fair to employers." *Kasten*, 563 U.S. at 11-13.

While oral, informal complaints can be sufficient, "not all abstract grumblings or vague expressions of discontent are actionable." *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008).  Although a complaint need not refer to the FLSA by name, it does need to be "frame[d]" in terms of "potential illegality." *Id.*  The "informal complaint" must "concern some violation of law." *Id.*; *see also Lasater*, 495 Fed. App'x at 463 (holding employee failed to allege

---

[7] *See* 5th Circuit Pattern Jury Instructions (Civil Cases) 11.5 n.5 (Title VII); *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008) (Title VII); *Payne v. WS Servs., LLC*, 216 F. Supp. 3d 1304, 1315 (W.D. Okla. 2016) (Title VII); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 443 (S.D.N.Y. 2009) (Title VII); *Justice v. Danberg*, 571 F. Supp. 2d 602, 613 (D. Del. 2008) (First Amendment retaliation claim); *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 41 (D.D.C. 2004) (Title VII).

protected activity when her expression of disagreement about a workplace policy was not a complaint of illegality).

*Hagan* involved a plaintiff-manager whose subordinates expressed concerns about the legality of a new schedule that would reduce their overtime. 529 F.3d at 620-21. The plaintiff asked an HR manager to speak with the employees who asked the legal question. *Id.* Although the plaintiff "personally voiced internal objections and concerns to management about the *possibility* of field technicians receiving less overtime pay," he did not "frame *any* of his objections in terms of the potential illegality of the change." *Id.* at 626. Thus, the plaintiff's "personal objections to the schedule change [did] not constitute protected activity under the FLSA." *Id.*[8]

In contrast to the plaintiff's conduct in *Hagan*, the Fifth Circuit summarized several circumstances that would constitute an informal complaint under the FLSA:

- an employee's outburst following her refusal to take part in what she thought was an unlawful scheme;

- the fact that an employee complained to the school district of unlawful sex discrimination and had told them she believed they were "breaking some sort of law" by paying her lower wages than previously paid to male temporary custodians;

- the complaints of female employees to a co-owner of the employer and to a foreman "about the unequal pay" despite the absence of a formal EEOC complaint at the time of retaliatory discharge; and

---

[8] The Fifth Circuit also determined that the plaintiff had not engaged in protected activity when he voiced his subordinates' questions about illegality to the HR manager because he did not "step outside his … role" as a manager in doing so. *Hagan*, 529 F.3d at 627. The court listed three ways an employee could step outside his role: "by either filing (or threatening to file) an action adverse to the employer, by actively assisting other employees in asserting FLSA rights, or by otherwise engaging in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Id.* at 627-28 (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996)). The "step outside the role" requirement ensures that an employee "make[s] clear to the employer that the employee was taking a position adverse to the employer." *Id.* at 628. It does not negate the requirement that a complaint be "frame[d] in terms of potential illegality." *Id.* at 626.

- sending a memo requesting a pay raise to the president of the employer with an attached copy of the Equal Pay Act.

*Id.*  Plaintiff's conduct does not resemble any of these circumstances.

### a. Plaintiff's own testimony shows she did not engage in protected activity.

Here, the "violation of law" Plaintiff asserts she complained about was Defendants' classification of her as an independent contractor, not an employee, and the resulting failure to pay overtime.  But Plaintiff admits:

- She never complained to anyone with Defendants that she thought she was an employee in 2014 or 2015.  She went on to say that a "reasonable person" would believe that would be a "stupid idea."  Tr. (Day 3) at 123.

- "Of course" she did not raise her hand to complain about her alleged misclassification when she applied to be the Agency Manager for San Jacinto County in 2016.  *Id.* at 124-25.

- "Of course" she did not complain to anyone at the Farm Bureau companies about the fact that she "knew" she was an employee the entire time she was the Agency Manager for San Jacinto County.  *Id.* at 166-67.

- It would have been "ridiculous" for her to raise her hand to Jon Sharp to say she thought she was an employee, not an independent contractor, when she became the Agency Manager in Polk County.  *Id.* at 169-70.

- "Of course" she did not give Jon Sharp a chance to address her belief that she was an employee.  She didn't even raise her hand.  *Id.* at 170.

- "Of course" she *never* told anybody at Farm Bureau that she thought she should be paid overtime.  *Id.* at 167, 202-203.

- "Of course" she *never* gave anybody at Farm Bureau notice that she thought she should be paid overtime.  *Id.* at 167.

- She *never* said it was illegal she was not receiving overtime.  *Id.* at 167.

- "Of course" she *never* told anybody at Farm Bureau that she thought Farm Bureau was breaking the law by not paying her overtime.  *Id.* at 203.

These admissions are fatal to Plaintiff's argument that she engaged in protected activity by filing a complaint.  As a matter of law, ***nothing*** she communicated to Defendants was "frame[d]" in

terms of "potential illegality" or a "violation of law." *Hagan*, 529 F.3d at 626.  Defendants are entitled to judgment as a matter of law.

Based on Plaintiff's presentation at trial, it appears that she will argue she "filed a complaint" in three ways.  First, she claims she referred to Mr. Sharp and everybody above her as her "boss."  But Plaintiff conceded that in using the word "boss" she was ***not*** "directly reporting that to my employer and complaining about that."  Tr. (Day 2) at 202.  As a matter of law, using the word "boss" did not give Defendants "fair notice" that Ward was "making a complaint that could subject [Defendants] to a later claim of retaliation."  *Kasten*, 563 U.S. at 13; *Lasater*, 495 Fed. App'x at 461.  Nor was it an "assertion of rights protected by the FLSA and a call for their protection."  *Kasten*, 563 U.S. at 14; *Lasater*, 495 Fed. App'x at 461.  It was certainly not a "complaint" framed in terms of illegality.  *See Hagan*, 529 F.3d at 626.  This is not protected activity as a matter of law.

Second, Plaintiff claims she told Farm Bureau she believed she was an employee and not an independent contractor by using the word "employers" in an email she wrote to Jon Sharp on July 5.  Plaintiff's Exhibit (P)46 (July 5, 2017 email from L. Ward to J. Sharp).  But the "whole subject of this e-mail" is the possibility the farrier might speak at the upcoming board meeting, Lane Morris's Facebook post, and the resulting fallout.  *Id.*; Tr. (Day 2) at 206.  It has nothing to do with misclassification, overtime, or the FLSA.  P46.  Plaintiff admits that the email does not say, "I believe I'm really an employee and not an independent contractor," as that would not have been "within the scope" of the email.  Tr. (Day 2) at 204-05.  She further admits that the email does not say she believed she was an employee entitled to overtime.  *Id.* at 205.  As a matter of law, the mere use of the word "employers" in an email completely unrelated to the FLSA is not a

"complaint" of illegality and cannot be protected activity.  *See Kasten*, 563 U.S. at 13-14; *Laster*, 495 Fed. App'x at 461; *Hagan*, 529 F.3d at 626.

Finally, Plaintiff asserts that not returning the affidavit was protected activity.  This assertion is not supported by the FLSA itself or by case law.  Plaintiff did not tell anyone within Farm Bureau that she did not submit the affidavit—*or why*.  Tr. (Day 2) at 249; Tr. (Day 3) at 205.[9]  When asked whether she ever told Jon Sharp, Justin Ingram, or Sloan Brown, she answered "No, of course not."  Tr. (Day 2) at 249; *see also* Tr. (Day 3) at 209.  She never verbally told Mr. Sharp, Mr. Ingram, or Mr. Brown that she thought the statements in the affidavit were false. *Id.* at 210.  Instead, she "think[s]" she told them "that by not signing it and … not returning it." *Id.*  But there is no evidence that John Sharp, Justin Ingram, Sloan Brown, or any of the Defendants viewed unreturned affidavits as unspoken complaints of illegality.  An agency manager could have not returned an affidavit because he disagreed with it—or because he was too busy, forgot, or just didn't want to get involved.  As a matter of law, at least under these facts, not returning an affidavit is not a "complaint" and cannot be protected activity.

On its face, the statute does not encompass "*not* complaining" as protected activity.  *See* 29 U.S.C. § 215(a)(3).  Indeed, one purpose of the statute is to encourage employees to raise their hands instead of "quietly accept[ing] substandard conditions."  *Kasten*, 563 U.S. at 11-12.  But the FLSA's enforcement system must also be "fair to employers," and the mere act of not returning the affidavit did not give Defendants "fair notice" that Ward was "making a complaint that could subject [Defendants] to a later claim of retaliation."  *Kasten*, 563 U.S. at 12-13; *Lasater*, 495 Fed. App'x at 461.  Nor was it an "assertion of rights protected by the FLSA and a call for their protection."  *Kasten*, 563 U.S. at 14; *Lasater*, 495 Fed. App'x at 461.  It was not a "complaint"

---

[9] In fact, she claims she told Bill Bergman she *was* going to sign it.  Tr. (Day 1) at 234.

framed in terms of illegality. *See Hagan*, 529 F.3d at 626. Something more must be required to give the FLSA's complaint requirement any teeth at all. Defendants are entitled to judgment as a matter of law.

        **b.**        **Plaintiff's cited authorities do not lead to a different result.**

Plaintiff argues that an employee need not "overtly engage in a protected activity or otherwise give the employer 'fair notice' that she is about to do so." ECF 237 at 2. "What matters most," according to Plaintiff, is the "causal relationship between the employer's knowledge and its retaliatory actions." *Id.* But this argument would essentially read the protected-activity requirement out of the statute. And it is not supported by Plaintiff's case law: two out-of-circuit cases in which employers mistakenly believed that a particular employee had engaged in protected activity, fired that employee, and then later learned that it was a different employee who had engaged in protected activity. *Saffels v. Rice*, 40 F.3d 1546 (8th Cir. 1994); *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987). But this is not a mistaken belief case, and *Saffels* and *Brock* are inapposite. Here, Plaintiff alleges that *she* engaged in protected activity and was terminated because of it, not that she bore the brunt of a retaliatory action based on someone else's conduct.[10]

Next, Plaintiff argues that "an employer's own affirmative communications to an employee about the exercise of FLSA rights can demonstrate 'fair notice' of a complaint." ECF 237 at 5. But two of the cases she cites do not address "complaints" or "fair notice" at all. *See Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872 (2d Cir. 1988); *Marshall v. Parking Co. of America-Denver, Inc.*, 670 F.2d 141 (10th Cir. 1982). Rather, in both cases, the DOL determined that the defendants were liable to their employees for overtime. *Casey Truck*, 839 F.2d at 875; *Marshall*, 670 F.2d at

---

[10] Neither *Saffels* nor *Brock* involved any question that *somebody* had engaged in protected activity, and neither involved a question of whether the employer had ***fair notice*** of the protected activity.

142.  After the DOL made that determination, each of the employers pressured the plaintiffs to give up the money the DOL had determined they were entitled to.  In *Casey Truck*, for example, the employer held a group meeting with the eleven current employees who were entitled to payments where he called anyone who felt they deserved the money a "parasite" and asked for return of the payments.  *Id.*  He then held individual, face-to-face meetings with those employees. *Id.*  Five did not renounce their entitlement to the payments or agree to return the money the DOL had secured for them.  *Id.*  All five were fired within two weeks.  *Id.*  Protection against discrimination for **instituting FLSA proceedings**, the court wrote, "would be worthless if an employee could be fired for declining to give up the benefits he is due under the Act."  *Id.* at 879 (emphasis added).

Similarly, in *Marshall*, the DOL determined a parking attendant was entitled to $1,300 in back pay for overtime.  670 F.2d at 142.  Several days later, the employee was asked to take a lie detector test about something that had happened months ago.  *Id.*  He was told he had failed the test and was discharged, but then his supervisor told him "if he would release the back pay claim the Company would forget the lie detector test." *Id.*  The employee refused, and he was terminated. *Id.*  These cases stand for the principle that insisting on receiving retroactive wage payments determined to be owed by the DOL is protected activity—not for the proposition that silence and inaction fall under the FLSA's protections. These cases do not eliminate or alter the requirements, set forth above, that a complaint framed in terms of illegality and fair-notice requirements are mandatory.

Finally, Plaintiff cites an unpublished out-of-circuit district court opinion from 2017, *Cain v. One Stop PC Help, Inc.*, No. 8:15-cv-1071, 2017 WL 10241541, 2017 U.S. Dist. LEXIS 229802 (M.D. Fla. 2017).  In this default judgment case, the plaintiff alleged his employer asked him to

sign a document stating that he had been paid all wages owing to him. *Id.* at *10. Because he was owed both overtime wages and a quarterly bonus, he deleted the language stating that he had received such wages and refused to sign the document. *Id.* He further alleged he was terminated as a result. *Id.* at *11. The complaint's allegations were lacking on the fair-notice issue, to put it mildly; among other things, the complaint lacked any allegation of notice and did not address whether the document with deleted language was ever presented to the employer. *Id.* at *13. The court wrote that the employer's request was "fairly understood to reveal [the employer's] knowledge of [its] obligation to pay overtime." *Id.* at *14. "In light of the content and context in which the letter was presented, Plaintiff's redaction and refusal to sign it suggests it is reasonable to conclude on the allegations that [the employer] understand [sic] that Plaintiff was asserting a complaint about the employer's payment practices under the FLSA." *Id.*[11] To the extent the opinion found fair notice through the employer's request alone, that finding is error, as the *employee* made no complaint framed in terms of illegality. *See Hagen*, 529 F.3d at 626. Moreover, in this case, Defendants' email about the affidavit cannot be "fairly understood" as revealing knowledge of an obligation to pay overtime. *See* D66 ("Farm Bureau completely disagrees with these contentions both from a factual and legal perspective."). This unpublished default judgment case does not justify—much less mandate—deviating from *Hagen*'s clear directives.

## 2.    **Plaintiff was not about to testify**.[12]

Plaintiff also incorrectly suggests that her conduct is protected activity under the FLSA's testimony prong. *See* 29 U.S.C. § 215(a)(3) (making it unlawful to discharge an employee because

---

[11] The opinion says nothing about "the context in which the letter was presented," and it does not include the entire contents of the letter—just the part that the plaintiff deleted.

[12] Plaintiff did not plead this theory. ECF 8 ¶103. Nor did she include it in her pretrial Contentions. ECF 222-5 at 3. Plaintiff's Bench Brief Regarding Protected Activities includes a section on the

the employee "has testified or is about to testify in" a proceeding related to the FLSA). It is undisputed that Plaintiff never testified in the *Ferguson* lawsuit.[13] Thus, as a matter of law, she cannot show she engaged in protected activity by testifying in an FLSA proceeding.

The question then becomes whether Plaintiff was "about to testify." Here, although the factual basis for Plaintiff's argument is unclear, it appears she asserts she was about to testify because she was about to file a consent to join the *Ferguson* lawsuit. Although the "about to testify" phrase does not require that testimony be scheduled or subpoenaed, it does require (i) intent to offer the testimony (ii) soon. *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 273-74 (3d Cir. 2022). As with complaints, being about to testify requires "fair notice" to the employer. *See id.* at 274-75. (The Third Circuit views "fair notice" as part of the causation prong—but there is no doubt that "fair notice" is required. *See id.*).

*Uronis*, which was decided at the 12(b)(6) stage, was a failure to hire case. *Id.* at 266-67. The plaintiff alleged that after he applied for a position, he received a text from a manager "stating that although [the plaintiff] was qualified for the position he applied for—and was in fact more qualified than other candidates being considered—the employer had declined to hire him or any other putative members of a collective action 'because of' that lawsuit." *Id.* at 267. The plaintiff also alleged that the defendant was aware the plaintiff was a putative member of "and anticipated witness in" the collective action—and that the defendant was aware "that he was about to file his consent to join." *Id.* at 266. The same day the plaintiff received notice he would not be hired because of the lawsuit, he signed his consent to join the collective action. *Id.* at 267. The district

---

testimony prong, but it does not identify the factual basis for that legal argument. ECF 237 at 7-8. Plaintiff should not be able to rely on an unpled, undisclosed theory of the case.

[13] It is also undisputed that Plaintiff never joined the *Ferguson* lawsuit. Tr. (Day 3) at 100-05. In any case, she does not argue that she engaged in protected activity by initiating an FLSA proceeding before her contracts were terminated.

court granted the defendant's motion to dismiss because the plaintiff was not "scheduled" to testify in the collective action.  *Id.*  The Third Circuit reversed, holding that "an employee who intends to **soon** file a consent to join a then-pending FLSA collective action is 'about to testify' under Section 15(a)(3)."  *Id.* at 274.  In opting for a broader definition of "about to" than the district court, the Third Circuit explained that a broad construction comports with "dictionary definitions of the term 'about,' which, in its temporal sense, includes activity that is 'reasonably close to, almost, on the verge of,' or 'intending to do something or close to doing something very soon.'"  *Id.* at 273-74.

It is undisputed that Plaintiff never filed a consent to join *Ferguson*.  She certainly did not file a consent to join "soon" after her contracts were terminated.  *See Uronis*, 49 F.4th at 274. Indeed, while Plaintiff offered her own conclusory testimony that she intended to join *Ferguson*, Tr. (Day 2) at 200, 221, she offered no testimony as to **when** she intended to join.  There is thus no evidence that Plaintiff was "reasonably close to" or "on the verge of" giving the testimony "soon."  *Uronis*, 49 F.4th at 273-74.  As a matter of law, Plaintiff was not "about to testify."  The fact that Plaintiff **never** filed a consent—instead filing a separate lawsuit nearly two years later— only buttresses this conclusion.[14]

To the extent Plaintiff argues that her not signing the affidavit is protected activity under the testimony prong, the statute's text does not include "*not* testifying" as protected activity— particularly when there has been no fair notice to the employer.  29 U.S.C. § 215(a)(3).  The words "testified" and "about to testify" include only two types of behavior: testimony that has occurred in the past, and testimony that is anticipated with reasonable certainty in the reasonably near future.

---

[14] *Uronis* does not and cannot stand for the proposition that any putative member of a collective action is about to testify, regardless of whether or when they intend to file a consent.  There are collective actions where many putative class members join, and collective actions where no putative class members join.

*See Uronis*, 49 F.4th at 273-74.  To hold otherwise would read words into the FLSA that do not appear on its face—and such a holding would directly contravene explicit instructions from the Supreme Court.  *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (calling it a "flawed premise" to assume that "the FLSA pursues its remedial purpose at all costs … It is quite mistaken to assume that whatever might appear to further the statute's primary objective must be the law. … Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage.") (internal quotation marks and citations omitted).

**B.     There is no legally sufficient evidentiary basis for a reasonable jury to find that Plaintiff's alleged protected activity was the but-for cause of her termination.**

FLSA retaliation claims require proof of but-for causation.  *See, e.g.*, *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 222 (5th Cir. 2018); *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004).  Here, Plaintiff cannot prove ***any*** causation because she cannot show the decisionmakers had knowledge that she did not return an affidavit or that she was allegedly "about to testify."

***The affidavit.***  Plaintiff admits she never talked to Jon Sharp, Justin Ingram, or Sloan Brown—the three people she claims retaliated against her—about the affidavit.  Tr. (Day 3) at 208-09.  Indeed, she admits she never told anyone within Farm Bureau that she did not sign the affidavit.  Tr. (Day 2) at 249.  There is no evidence she ever told anyone with Farm Bureau ***why*** she did not sign the affidavit.  For this reason alone, Defendants are entitled to judgment as a matter of law.

To avoid these facts, Plaintiff relies on two speculative theories in an attempt to establish Defendants' knowledge.  First, she speculates that Sharp, Ingram, and Brown must have known she had not signed on the afternoon of June 21st because she got a call from Bill Bergman where he allegedly talked about the affidavit.  She offers no evidence that Bergman talked to Sharp,

Ingram, or Brown—or anyone else with Defendants, for that matter.  *See* Tr. (Day 3) at 209-10 (Plaintiff not aware of any conversations between Bergman and Brown, Sharp, or Ingram about the affidavit).  And all three decisionmakers deny ever talking to Bergman about the affidavit.  Tr. (Day 4) at 169, 261 (Sharp); Tr. (Day 5 – Ingram and Brown).

Second, Plaintiff speculates that Defendants knew she had not signed because she did not get a subsequent email on July 11 that Sloan Brown sent to an "unknown group" of agency managers who apparently signed the affidavit.  Tr. (Day 3) at 5.  Brown's uncontroverted testimony is that he did not keep track of who did not return affidavits.  Tr. (Day 5).  He determined which agency managers to send the email to based on doing a word search of his email for the word "affidavit" and then auto-populating the bcc: field.  *Id*.  As he was going through this process, he noticed the absence of a couple specific agency managers.  *Id*.  But Brown did not realize Plaintiff had not returned an affidavit until she filed this lawsuit almost two years later.  *Id*.  The same is true of Jon Sharp and Justin Ingram, who testified unequivocally that they did not know Plaintiff had not returned an affidavit until this litigation was filed.  Tr. (Day 4) at 169; Tr. (Day 5).  The Supreme Court applies a "fair notice" requirement because "it is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint."  563 U.S. at 14.  Because Plaintiff never put Defendants on fair notice that she was making a complaint of illegality or was *refusing* to testify in *Ferguson*, causation is lacking as a matter of law.

***About to file a consent.***  Plaintiff never told anybody at Farm Bureau that she intended to file a consent to join the *Ferguson* lawsuit.  Tr. (Day 3) at 200.  And there is no evidence that Defendants believed or anticipated that Plaintiff would join *Ferguson*.  Once again, causation is lacking as a matter of law.

III.   **DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S** *SABINE PILOT* **CLAIM**

To fit within the "very narrow exception" to Texas' employment-at-will doctrine, the plaintiff must prove that: she was required to commit an illegal act which carries criminal penalties; she refused to engage in the illegality; she was discharged; and the sole reason for her discharge was her refusal to commit an unlawful act. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex. 1985); *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003). The Court should grant judgment as a matter of law in Defendants' favor because Plaintiff has not established (i) that she was required to sign and submit the affidavit, or else lose her job; (ii) that if she had signed and submitted the affidavit, doing so would have satisfied the elements of perjury; or (iii) that her refusal to commit perjury was the sole cause of her separation from Defendants.

A.   **Plaintiff has not established that she was "required" to engage in an illegal act.**

To satisfy *Sabine Pilot*'s narrow and strict elements, the employer must "*require* the employee to commit an illegal act." *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626 (Tex. App.—Fort Worth 1990, writ denied) (emphasis in original). That means, in this case, Plaintiff had to show she was forced by Defendants to choose between submitting a false affidavit and the termination of her contracts. *Winters v. Houston Chronicle Pub'g. Co.*, 795 S.W.2d 723, 724 (Tex. 1990). Ward has elicited no such evidence.

Instead, Plaintiff **conceded** that no one employed by the Defendants required her to submit the affidavit. *See* Tr. (Day 3) at 212 (Ward) ("Q. [N]o one ever came to you and said, 'we saw you didn't sign it and return it, you're required to do it.' Nobody did that; right? A. No."). Nor did anyone ask her whether she signed it, or why she did not do so. *Id.* ("Q. … [N]o one at Farm Bureau, including Mr. Sharp, Mr. Ingram, and Mr. Brown, ever came to you and said, 'hey, Lindsay, why didn't you return the affidavit?' Nobody did that; right? A. No."). And Plaintiff did

not accuse Sharp, Ingram, Brown, or anyone employed by the TFB Insurance Companies or SFB Life of directing her to sign the affidavit, or else lose her job.  *Id.* at 212-13.

The email from Sloan Brown that attached the draft affidavit made no demands.  P43.  The most Plaintiff could muster was that Brown was her "boss's boss's boss."  Tr. (Day 2) at 224 (Ward).  But Brown's email states she was "not required to sign this affidavit," and the decision to sign or not was her "own."  P43.  Plaintiff was assured there would be "no retaliation" regardless of whether she signed.  *Id.*  To the extent Plaintiff construed this as a demand, her perspective is necessarily strained and subjective, which is not the measure.  *White*, 319 F.3d at 677 (employee's "subjective interpretation of [] supervisor's remarks" was not evidence of a "direction to commit" an unlawful act); *Akene v. Goodwill Indus. of Cent. Tex.*, 2018 U.S. Dist. LEXIS 33819, at *12 (W.D. Tex. Feb. 28, 2018) (subjective interpretation cannot support *Sabine Pilot* claim).

Plaintiff also testified that statements of alleged, unidentified "higher ups," purportedly relayed through Bill Bergman, constituted a directive to sign and submit the affidavit.  Tr. (Day 2) at 234 (Ward).  Bergman was President of the Polk County Farm Bureau, which was not Plaintiff's employer.[15]  Plaintiff adduced no evidence that Bergman was authorized to speak for Defendants.  To the contrary, Defendants' witnesses unequivocally denied that any such directive was made,

---

[15] There is insufficient evidence that this statement was ever made. Bergman did not recall making any such statement. *See* Tr. (Day 5) (Bergman testimony by deposition). Plaintiff did not raise the alleged threat in a recorded call she choreographed with Bergman; in a follow-up call with Bergman, also recorded; or in a recorded call with Sharp. Tr. (Day 3) at 229-31, 237 (Ward). Nor did Lane Morris – Plaintiff's then-boyfriend, who the record reflects exhibited poor impulse control when he believed Plaintiff was unfairly treated – engage in social media activity consistent with the notion that Plaintiff was threatened. *Id.* at 258. Plaintiff did not begin recording calls or forwarding emails to herself until after the Facebook post – she did not engage in these activities after declining to submit an affidavit. *Id.* at 259-60. And she documented the threat Bergman made about the Board's reaction to the Facebook post but not the supposed threat relating to the affidavit. *Id.* at 260.

through Bergman or otherwise.[16] Therefore, even if Bergman's purported statement is not inadmissible hearsay (as Defendants respectfully maintain), it does not qualify as a demand by Plaintiff's employer to commit an illegal act.

Because Plaintiff was not required to submit an affidavit, judgment for Defendants is warranted on this claim.

### B.    Plaintiff has failed to establish any "illegal" act.

Even if, contrary to proof, Plaintiff was required to sign and submit the affidavit, she must establish that she would have committed perjury had she done so. A person commits perjury if: (1) with intent to deceive and with knowledge of the statement's meaning, she makes a false statement under oath;[17] or (2) having taken an oath before a notary that any written declaration subscribed by her is true, willfully and contrary to such oath subscribes any material matter which she does not believe to be true.[18] Whether the facts in the record ***could*** support a finding that Defendants directed Plaintiff to commit perjury is a question of law for the Court.

The sworn statement at the heart of a perjury charge must be an objectively false statement of fact, and not an opinion, construction, deduction, or the like. As stated by the Texas Court of Criminal Appeals:

> Where the statement which is the basis of the accusation is a matter of construction, or a deduction from given facts, the fact that it is erroneous, or is not a correct construction, or is not a logical deduction from all the facts, cannot constitute it perjury or false swearing. A witness cannot be guilty of perjury in giving his opinion as to the legal effect of facts about which he is required to testify. Thus ***a misconception or mistake in swearing to the construction of a written instrument is not sufficient to warrant a conviction of perjury***.

---

[16] *See* Tr. (Day 4) at 261 (Sharp) ("Q. Are you aware of anybody communicating a threat about these affidavits to anyone [intended] to influence an agency manager in any way?  A. No, sir.").
[17] Tex. Pen. Code § 37.02(a)(1).
[18] 18 U.S.C. § 1621(1).

*Schoenfeld v. State*, 119 S.W. 101, 103-04 (1909) (emphasis added). The speaker must believe the statement to be false.  *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) ("A jury must find not only that the statement in question is false, but that the speaker believed it was false. If the jury concludes that a defendant honestly, though mistakenly, thought that his statement was true when he made it, then the jury could not find that he 'intended to deceive.'") (construing Tex. Pen. Code § 37.02(a)(1)); *Beckanstin v. United States*, 232 F.2d 1, 4 (5th Cir. 1956) ("in order to constitute perjury, a false statement must be made with criminal intent, that is, with intent to deceive, and must be willfully, deliberately, knowingly and corruptly false") (construing 18 U.S.C. § 1621(1)).

Plaintiff has not established that she would have committed perjury because she has not identified an actionable false statement, or satisfied perjury's mental state requirement. Plaintiff testified that the "false" statements in the draft affidavit involve whether she believed herself to be in an employment relationship with Defendants; the degree of freedom she was afforded in managing her agencies; whether an exclusive relationship with the Defendants was a positive or negative attribute for an agency manager; and whether trainings and meetings were more than "occasional" and whether they were mandatory. *See* Tr. (Day 2) at 223, 229-32 (Ward).[19]

None of those statements can be perjurious *as a matter of law*.

As an initial matter, the draft affidavit was sent to over 100 people with an express invitation to edit it as the recipient "see[s] fit," because the draft was meant only "as a starting point." P43. In the context of a draft statement that the recipient was invited to edit, none of its

---

[19] Plaintiff further testified that submitting an affidavit and later joining Ferguson's lawsuit "felt like that would be the wrong thing to do," but she cannot ground a perjury claim in how a statement might make her feel, or its potential negative effect of her litigation strategy. Tr. (Day 3) at 1.

statements could qualify as ***objectively*** false unless the statements could not be edited by the recipient in a way that would make them true. Plaintiff has elicited no evidence to that effect here.

As for the statements themselves, the draft affidavit's statement about whether she was in an employment relationship with Defendants – if submitted without edits to the court – would have been, at most, an opinion as to the legal effect of certain facts (by a non-lawyer). Such statements cannot constitute perjury as a matter of law. *See Savage v. Herrin Transfer & Warehouse Co.*, 219 S.W.2d 101, 103 (Tex. Civ. App. 1949) (to constitute perjury, "the statement sworn to must be one of fact and not of opinion as to the legal effect of certain facts"); *Schoenfeld*, 119 S.W. at 103-04. Statements of opinion – like whether exclusive (or "captive") status is a net positive or not, the degree of freedom the agency manager position afforded, or whether the number of meetings a given agency manager attends qualify as more than "occasional" – are not actionable as perjury.

Finally, to meet perjury's mental state requirement, Plaintiff needed to show that Defendants ***ordered*** her to act with the intent to deceive the *Ferguson* court, which in turn would require Defendants to know whether Plaintiff ***believed*** various statements in the draft affidavit to be false. *See* Tex. Pen. Code § 37.02(a)(1); 18 U.S.C. § 1621(1); *De La Paz*, 279 S.W.3d at 344; *Beckanstin*, 232 F.2d at 4. Plaintiff offered ***no evidence*** that she had shared her beliefs with Defendants about: whether she considered herself an employee or independent contractor; how much control she had about the manner and means of her work; whether exclusively selling Farm Bureau and Farm Bureau's approved brokerage products was a net positive or negative for agents and agency managers; whether she had to attend more than an occasional number of meetings or trainings, or that she felt compelled to attend them. Because Defendants did not know, and could not have known, Plaintiffs beliefs, Defendants could not have directed her to act in derogation of those beliefs.

In fact, Plaintiff testified that she thought she was an employee before she ever received an affidavit and was aware of Ferguson's lawsuit. Tr. (Day 3) at 100:16-24. But she never told anyone about these beliefs. *Id.* at 122, 124, 141, 167, 170, 200-03. She never told anyone that she intended to join Ferguson's suit. *Id.* at 200. And she did not join Ferguson's lawsuit before she received the draft affidavit, after speaking with Bill Bergman about alleged "higher ups," or any time after. *Id.* at 100-01, 104-05.

Most notably, Plaintiff conceded she did not tell anyone she believed the statements in the affidavit were false. *Id.* at 210 ("Q. [Y]ou never verbally told Mr. Sharp, Mr. Ingram, or Mr. Brown that you thought the statements in the affidavit were false?  A. Verbally, no."). Nor did she tell anyone she thought she would be "committing perjury if [she] signed that affidavit." *Id.*.

Because the actions complained of cannot amount to perjury, the Court may grant judgment as a matter of law to Defendants for these reasons alone.

### C.    Plaintiff did not establish that her decision not to submit the affidavit was the sole cause of her separation from defendants.

Setting aside Plaintiff's failure of proof on the falsity of the statement and the mental state requirement, and her failure of proof on whether she was directed to submit a false statement, judgment is warranted for Defendants because Plaintiff has not shown her choice to not submit an affidavit was the ***sole cause*** for the termination of her contracts. *See Texas Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995). If there is ***any other reason*** for the employee's discharge, she ***cannot*** meet her burden of proof, even if the refusal to perform an illegal act was one of the reasons for the discharge. *Hanold v. Raytheon Co.*, 662 F. Supp. 2d 793, 802 (S.D. Tex. 2009) ("An employer who discharges an employee for refusing to perform an illegal act *and* for a legitimate reason cannot be held liable for wrongful discharge; the refusal must be the *sole* cause

of the employee's termination.") (emphasis in original); *White*, 319 F.3d at 676 (same); *Bell v. Specialty Packaging Prods.*, 925 F. Supp. 475, 477 (W.D. Tex. 1994) (same).

Plaintiff failed to show her decision not to submit the affidavit was ***a*** cause, let alone ***the sole cause***, of her termination. Implicit in this causation requirement is that the employer ***know*** of the employee's refusal; otherwise, the employee's refusal to perform an illegal act could not be the reason, sole or otherwise, for her termination. Plaintiff has produced no evidence that Defendants' executives were even aware of Plaintiff's decision at the time her contracts were terminated.

Instead, Plaintiff testified that she got the "impression" that Defendants' executives were aware because she had not submitted the affidavit as of around 5:00 p.m. on the day the Sloan Brown email was sent, and Bill Bergman called her around that time. Tr. (Day 3) at 1-2 (Ward). Plaintiff further assumes that her omission from an email to Agency Managers who *did* sign and submit an affidavit means that Defendants did some sort of analysis of who did *not* sign and made her contract termination decision based on that.  But Plaintiff's position is based on mere speculation and conjecture; there is no evidence to support her counsel's logical leaps.

Plaintiff conceded she has no personal knowledge of Brown, Ingram, or Sharp discussing her decision not to sign the draft affidavit with Bergman.  *Id.* at 209-10.  She did not discuss the affidavit with anyone, and she did not tell anyone that she disagreed with the statements in the draft affidavit. *Id.* at 209-10.  She admitted that neither Brown, Ingram, nor Sharp told her she had to sign it, asked her why she didn't sign it, or suggested if she failed to sign it, her contracts would be terminated. *Id.* at 212-13.  Sharp testified unequivocally that he was not aware Plaintiff had not

signed the affidavit at the time he recommended her contracts be terminated and that it had nothing to do with the termination decision.  *See* Tr. (Day 4) at 261.[20]

Regardless, even assuming the counterfactual in which Plaintiff's decision not to sign the affidavit was one cause of her termination, Plaintiff has failed to prove the key point: ***that it was the <u>sole</u> cause***. Plaintiff has failed to negate the evidence that her (i) agency's slipping financial performance;[21] (ii) abandonment of the office at a time of crisis she participated in generating;[22] (iii) chaos and dysfunction within the Polk County Farm Bureau community, including with regard to the Board and board members;[23] strained relations within the office and potential for collective defection of agents and staff, [24] complaints from Farm Bureau members;[25] and failure to recruit

---

[20] The testimony of other witnesses put on by Defendants, namely Brown and Ingram, was consistent.  *See generally* Tr. (Day 5- Brown and Ingram Testimony).

[21] Tr. (Day 4) at 97, 99-100, 103-04, 198-200 (Sharp) (discussing downward trend in Polk County's performance).

[22] *Id.* at 232-34 (Ward) (reflecting Sharp's inability to reach Plaintiff for days to deal with Board issues); *id.* at 235-36 (noting that Facebook rippled through County Board like "wildfire" while Ward was unreachable); *id.* at 240-44 (Sharp told her he understood Plaintiff had not been in office for 10 days); *id.* at 245 (Plaintiff was not in touch with agents, who needed guidance and support); *id.* at 252-53 (noting additional absences from office on July 27th and 28th); *id.* at 255-57 (Sharp could not reach Ward to discuss Board Member Wilson's insurance complaint); Tr. (Day 4) (Sharp) at 154-58 (Sharp could not reach Plaintiff to discuss Facebook issue); *id.* at 255-56 (lack of responsiveness when Sharp trial to reach Plaintiff to discuss customer coverage issue).

[23] *Id.* at 220-23 (Ward) (discussing background of Facebook post, post itself, and its inappropriateness, and need to be on good terms with Board); *id.* at 227 (Facebook post was a "major problem" for Polk County Board); *id.* at 229-30 (Bergman told Plaintiff her job was in danger unless she had post removed and retracted).

[24] Tr. (Day 3) at 246 (Ward) (both county secretaries were seeking new employment); *id.* at 246-47 (Plaintiff not aware Young was looking for new agent position; Jehnzen had requested a transfer; agrees it would be "a really bad situation" for agency is staff and agents left *en masse*).

[25] Tr. (Day 4) at 200-04 (Sharp) (10-12 customer complaints brought to Sharp's attention in February 2017); *id.* at 205 (complaint received in April 2017 about Plaintiff not returning a customer's calls); *id.* at 250-53 (complaint in July 2017 from prominent community member regarding new house not being properly insured).

new agents[26] all contributed to the termination of her contracts. *See* Tr. (Day 4) (Sharp) at 256-57 ("[B]ased on everything we had been through, the face-to-face meetings, … the calls, the text[s], her disengagement from the office with the staff, with the agents, the situation with the board -- the culmination of all of these issues and then for something like this last situation to happen [with the board member's insurance coverage], … at this point, I did not see that we could move forward with Ms. Ward.").

*Turner v. Goodwill Industries of Houston* is instructive.  There, the court reiterated that "[a]n employer who discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge."  *Turner*, 2014 U.S. Dist. LEXIS 97344, at *28-29 (S.D. Tex. July 17, 2014) (internal quotation marks and citations omitted; emphasis in original).  The court concluded that one of the plaintiffs' *Sabine Pilot* claims failed as a matter of law because "there were several reasons" why she was terminated; she, therefore, could not "prove that she was terminated for the sole reason that she refused to perform an illegal act." *Id.* (internal quotation marks and citation omitted).  A second plaintiff's claim likewise failed "because the uncontroverted evidence demonstrate[d] that [the employer] had at least one reason to reduce her hours that was wholly unrelated to her claimed refusal to perform an illegal act." *Id.* And the third plaintiff's claim failed because she "adduced nothing that demonstrate[d] that the 'sole reason for her discharge was her refusal to commit an unlawful act.'" *Id.* (quoting *Sabine Pilot*, 687 S.W.2d at 735).  Rather, the evidence reflected that she had a history of tardiness and absenteeism and was terminated for abandoning her job.  *See id.*  Her reliance on "conclusory

---

[26] *Id.* at 179 (Ward) (Ward did not recruit a single new agent to Polk County); Tr. (Day 4) (Sharp) at 110-11 (Sharp did not participate in one interview of an agent recruited by Ward); *id.* at 120, 127-28, 132 (Sharp) ("So she knew starting off [as AM in Polk County] she had recruiting to do").

allegations and unsubstantiated assertions" to try to "support[ ] the notion that she was fired because of her refusal to perform an illegal act" was insufficient.  *Id.*

The same is true for Plaintiff here.  The basis for her claim that her contracts were terminated because of her refusal to commit an illegal act rests exclusively on her own conclusions, assumptions, and unsubstantiated assertions—none of which are sufficient to send her *Sabine Pilot* claim to the jury.  The trial record credibly demonstrates multiple reasons why Plaintiff's contracts were terminated, eliminating any reasonable conclusion that her purported refusal to perform an illegal act was the *sole* reason.  The Court should grant judgment as a matter of law to Defendants.

## IV.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON WILLFULNESS.

To establish willfulness, Ward was required to show that Defendants acted in  "deliberate" and "intentional" violation of their obligations under the FLSA.  *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 511 (N.D. Tex. 1988) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) ("Reckless" conduct is "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash. Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do.").

"Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections, Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). An employer is merely negligent when it "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" or "fails to seek legal advice regarding its payment practices." *Id.* Further, failure to adequately research the FLSA's applicability or

failure to consult with the Department of Labor regarding the employer's payment practices are insufficient to demonstrate willfulness. *Id.*[27]

The same is true when an employer merely "acted without a reasonable basis for believing that it was complying with the statute." *McLaughlin*, 486 U.S. at 134-35. Willfulness is instead found only where a plaintiff proves that an employer knew its method of payment violated the FLSA prior to the accrual of the action or continued a pay practice after being put on notice that the practice violated the FLSA through prior complaints or investigations. *See Rosales v. Industrial Sales & Servs., L.L.C.*, 2022 WL 4751171, at *11 (S.D. Tex. Sept. 30, 2022); *see also Zannikos*, 605 F. App'x at 360-61 ("willfulness" under the FLSA exists when "an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention").

Ward's evidence does not rise to willfulness. Her expert's testimony was devoted to showing it was *negligent*, not reckless, for Defendants to fail to revisit the classification of its agents and agency managers. Evidence of negligence, even if credited, is insufficient. *See McLaughlin*, 486 U.S. at 134-35. The same goes for the testimony Ward extracted from Defendants' witnesses, as to whether they explored whether the classifications long in use by

---

[27] Some courts have cited 5 C.F.R. § 551.104 as defining "reckless disregard" as the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." But this part of the CFR is from the title addressing administrative personnel, the chapter addressing the office of personnel management, the subchapter addressing civil service regulations, and the part addressing "pay administration under the [FLSA]." Thus, it would seem that the regulation would not apply to private employers. Nevertheless, "the regulations are secondary to the standard stated by the Supreme Court in *McLaughlin*. *See Moreno v. United States*, 82 Fed. Cl. 387, 397 n.24 (Fed. Cl. 2008) (explaining that the Supreme Court's interpretation of a statute trumps a subsequent agency interpretation inconsistent with the Court's precedent)." *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 924 (E.D. La. 2009). In *Big Lots*, the court followed the Supreme Court's standard and found that the plaintiffs had not shown a willful violation. Judge Sparks similarly recognized that the regulation cannot override Supreme Court precedent: "Read consistently with McLaughlin, a 'failure to make adequate inquiry' must mean more than a negligent or unreasonable failure." *Clark v. Centene Co. of Tex., L.P.*, 104 F. Supp. 3d 813, 825 (W.D. Tex. 2015).

Defendants had become stale. Defendants had fielded no government investigations or other challenge to those classifications, so had no reason to believe their classifications warranted revisiting. *See, e.g.,* Tr. (Day 5) at 164:13-21; 101:16-20. And there is no support for Plaintiffs' contention that non-final district court rulings require alleged employers to reclassify their workers or otherwise be accused of willfulness.

Ward herself never raised an issue with her classification while she was contracted with Defendants. *E.g.,* Tr. (Day 5) at 66:13-15. At the time she was a manager, there was no judicial ruling that Ward was an employee under the FLSA. *Id.* at 90:9-12. Mr. Brown testified that, until Christopher Ferguson filed his case, there had never been a complaint about classification in his long tenure with Texas Farm Bureau. *Id.* at 101:06-10. In his view, there was no need to revisit the Companies' classifications, because the sales force appreciated their classification as independent contractors, had not complained, and their classification was consistent with industry standards. *Id.* at 101:25-103:05.

Defendants' witnesses explained that Defendants operate in an industry with a long history of classifying agency managers and agents as independent contractors. *E.g.,* Tr. at 102:05-08; 168:5-8. Ernie Csiszar, Defendants' industry expert, described the long history of independent contractor classifications in the insurance industry, the reason that classification fits the industry well, and why Defendants' maintenance of its classifications was consistent with longstanding industry practice.

Nothing in the record reflects a willful intent to violate the FLSA. Instead, the evidence reflects that Defendants operated in good faith and on the belief that classifying workers consistently with the industry standard satisfied their obligations. Until Ferguson's suit, no contractor had complained, and no final, non-appealable decisions indicate that Defendants'

classifications are improper. The Court should enter judgment for Defendants on the issue of willfulness.

## V.     DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S REQUESTS FOR DAMAGES FOR MENTAL ANGUISH, EMOTIONAL DISTRESS, OR HUMILIATION.

Defendants are entitled to judgment as a matter of law on Plaintiff's requests for damages for alleged "emotional distress and mental anguish" in connection with her FLSA retaliation and *Sabine Pilot* claims.  *See* ECF No. 8, ¶¶ 106, 131(b), 133(e).

### A.     Mental anguish damages are not available under *Sabine Pilot*.

No court has held that damages for mental anguish, emotional distress, or humiliation are available for a *Sabine Pilot* claim.  The only Texas court to address the issue specifically declined to decide it.  *See Safeshred, Inc. v. Martinez*, 310 S.W.3d 649, 667 (Tex. App.—Austin 2010) (*Safeshred I*) ("[W]e do not address Safeshred's fourth issue on appeal, which asserts that damages for mental anguish are not available in a *Sabine Pilot* cause."), *aff'd in part, rev'd in part on other grounds*, 365 S.W.3d 655 (Tex. 2012), *as corrected* (June 8, 2012) (*Safeshred II*).   And "[n]oneconomic damages are the exception, not the norm, in tort law."  *Gregory v. Chohan*, 670 S.W.3d 546, 553 (Tex. 2023).  There is no guarantee the Texas Supreme Court would extend recovery of mental-anguish damages to a *Sabine Pilot* claim—which reflects a ***narrow*** exception to Texas's at-will employment doctrine and general rule that an employee may be terminated for good cause, bad cause, or no cause.  *See Safeshred II*, 365 S.W.3d at 659 (Texas Supreme Court has "consistently refused to expand *Sabine Pilot* beyond the 'narrow exception' we recognized in that case"); *Soukup v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 01-11-00871-CV, 2012 WL 3134223, at *2, 2012 Tex. App. LEXIS 6526 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet. dism'd) (Texas courts of appeals have also declined to expand the common-law cause of action).

**B.** **The evidence is legally and factually insufficient to support an award of mental anguish damages under the FLSA and *Sabine Pilot.***

The evidence presented by Plaintiff is legally and factually insufficient to support an award of damages for mental anguish, emotional distress, or humiliation by a reasonable jury. Under Texas law, to "survive a legal sufficiency challenge," the record must "contain[ ] direct evidence of the ***nature, duration, and severity*** of the plaintiff's mental anguish, thus establishing a ***substantial disruption in the plaintiff's routine***." *Safeshred I*, 310 S.W.3d at 666 (emphasis added); *see also Gregory*, 670 S.W.3d at 554 ("'evidence of the nature, duration, and severity of mental anguish' is required to establish the existence of mental anguish damages") (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). As the *Safeshred I* court explained:

> If claimants fail to present direct evidence of the nature, duration, and severity of their anguish, the appellate court conducts a traditional no-evidence review. In this review, the court determines ***whether the record contains any evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger***. We note, however, that the absence of evidence of the nature, duration, and severity of mental anguish, particularly when it can be readily supplied or procured by the plaintiff, justifies close judicial scrutiny of other evidence offered on this element of damages.

310 S.W.3d at 666 (internal quotation marks, alterations, and citations omitted).

In *Safeshred I*, for example, the plaintiff "presented evidence that the ordeal was 'very stressful' and caused him to lose 'a lot' of sleep." *Id.* at 666-67. He did not, however, "present direct evidence of the precise ***duration or severity*** of the mental anguish he suffered." *Id.* (emphasis added). The court proceeded to "examine the record under a traditional no-evidence analysis for other proof of a ***high degree of mental pain and distress that is more than mere worry***." *Id.* (emphasis added; citation omitted). The court noted that "evidence that a plaintiff was unable to sleep, was depressed, and suffered from anxiety does not rise to the level of compensable mental anguish under Texas law." *Id.* (cleaned up; citation omitted). The plaintiff's "evidence

that he experienced sleeplessness, stress, and anxiety due to hauling illegal loads, being fired, and being forced to search for another job" did "not rise to the level of compensable mental anguish." As a result, the appellate court reversed the jury's award of damages for mental anguish. *See id.*

Here, Plaintiff offered only her own vague and conclusory testimony.  Plaintiff testified about the embarrassment she felt when interacting with others in her small town; described being "really stressed out"; and provided conclusory and cursory testimony regarding vomiting, weight loss, and eye twitching.  Tr. (Day 3) at 60-61.  Although she described a disruption in her routine because she was no longer going to work, she did not testify that her alleged ***mental anguish*** disrupted her routine, much less ***substantially*** so.

Moreover, Plaintiff did not present any direct evidence of the duration or severity of her alleged humiliation, distress, and mental anguish.  Apart from the immediate aftermath of her termination, Plaintiff offered no indication of how long her alleged mental anguish lasted or that she suffers from lasting distress.  To the contrary, she has moved away from the small town in which she was an Agency Manager for Defendants; has remarried; had two children; and works as a ranch manager—a job that she "really enjoy[s]" and that complements her skillset and lifelong interest in horses and agriculture.  Tr. (Day 2) at 77, 83-90; Tr. (Day 3) at 79-80, 83-84, 87, 92.

As in *Safeshred I*, Plaintiff's testimony does "not rise to the level of compensable mental anguish."  310 S.W.3d at 666-67.

### C.  There is no evidence the jury could use to determine the amount of mental anguish damages to award for Plaintiff's *Sabine Pilot* claim.

Texas law on compensatory damages for mental anguish requires not only that Plaintiff provide "evidence as to the *existence* of compensable mental anguish" but also "evidence to justify the *amount* awarded."  *Gregory*, 670 S.W.3d at 554 (internal quotation marks and citations omitted; emphasis in original).  Indeed, the jury does not have "unlimited" discretion to "simply

pick a number and put it in the blank"; its award of this form of compensatory damages must be grounded in legally sufficient evidence.  *Id.* at 554, 557, 561-62 ("[A] rational reason, grounded in the evidence, must be given by the plaintiff, whose burden it is to prove damages.  Only then can juries and judges rationally assess whether the amount is reasonable and just compensation for the injuries suffered.").  Here, Plaintiff presented ***no evidence*** the jury could use to justify or rationalize any award of mental anguish damages for her *Sabine Pilot* claim.

### D.      The evidence is legally and factually insufficient to support an award of mental anguish damages under the FLSA.

The evidence presented by Plaintiff is likewise legally and factually insufficient with respect to Plaintiff's claim for mental anguish damages for her FLSA retaliation claim.  Similar to Texas courts, federal courts in retaliation cases have required that damages for emotional distress "be supported by competent evidence concerning the injury," including proof of a "specific discernable injury to the claimant's emotional state" and evidence regarding the "nature and extent" of the harm.  *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) (internal quotation marks and citations omitted).  This "specificity standard [i]s unequivocal" and "must be met before mental anguish damages can be awarded."  *Id.*  "Hurt feelings, anger and frustration are part of life," *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996), and are "not the types of harm that c[an] support a mental anguish award."  *Brady*, 145 F.3d at 718.[28]

---

[28] The Fifth Circuit has, on multiple occasions, required plaintiffs seeking damages for emotional distress and mental anguish to present ***more*** than their own "vague, conclusory, and uncorroborated" testimony.  *Brady*, 145 F.3d at 720; *see also Harris v. FedEx Corporate Servs., Inc.*, 92 F.4th 286, 300-01 (5th Cir. 2024) (contrasting the "cursory, uncorroborated testimony" offered in *Patterson* with cases in which the plaintiffs justified damages award by offering their own, detailed testimony corroborated by the testimony of a co-worker or a spouse).  Here, Plaintiff presented ***no*** evidence to corroborate her claimed emotional distress and mental anguish other than her own testimony.  That lack of corroboration, coupled with the vague and conclusory nature of Plaintiff's testimony discussed below, warrants judgment in Defendants' favor.

The Eastern District of Texas recently deemed a jury's award of mental anguish damages in a retaliation case to be unreasonable where the plaintiffs "failed to establish '[t]he existence, nature, and severity' of their alleged harm." *Yarbrough v. Glow Networks, Inc.*, 2024 WL 896747, at *34 (E.D. Tex. Mar. 1, 2024) (citation omitted). The court, for example, deemed one plaintiff's testimony that he had anxiety; felt depressed, sad, and anxious; couldn't sleep; and felt fatigued to be insufficient. *See id.* at *31. Another plaintiff's testimony that he talked to a counselor once and had PTSD, anxiety, and nightmares was also insufficient. *See id.* at *30. The court noted: "Few [p]laintiffs submitted any corroborating evidence. And no [p]laintiff proffered medical records or presented testimony of their doctors…." *Id.*

In *Hitt v. Connell*, the Fifth Circuit likewise concluded that "vague, conclusory, and uncorroborated" testimony by the plaintiff did not "legally support mental anguish damages." 301 F.3d 240, 251 (5th Cir. 2002). Standing alone, a plaintiff's testimony must be sufficiently "particularized and extensive" to prove mental damages. *Id.* The plaintiff in *Hitt* presented no medical evidence, testimony from family members or co-workers, or evidence of physical manifestations of distress. *See id.* And his "testimony that his discharge was emotionally trying" and a "blight on [his] reputation"; he "was depressed"; he "was embarrassed"; and he was "defensive" about having to explain why he was looking for work, on its own, was not sufficiently "particularized and extensive" to prove mental damages. *See id.*

Plaintiff's testimony here is just like the testimony in *Yarbrough* and *Hitt*. Indeed, Plaintiff's vague and conclusory testimony about embarrassment, stress, vomiting, weight loss, and eye twitching, Tr. (Day 3) at 60-61, gave "no hint as to the nature or extent or severity of the alleged harm." *Brady*, 145 F.3d at 719. For these and the reasons discussed in subsection B above,

Plaintiff's testimony is not sufficiently "particularized and extensive," *Hitt*, 301 F.3d at 250-51, to support an award of mental anguish damages for her FLSA retaliation claim.

Because Plaintiff has failed to present evidence sufficient to support a reasonable jury's award of damages for mental anguish, emotional distress, or humiliation for either her *Sabine Pilot* or FLSA retaliation claim, the Court should enter judgment as a matter of law for Defendants.

## VI. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THEIR MITIGATION-OF-DAMAGES DEFENSE.

A plaintiff who refuses a job substantially equivalent to the one she was denied, or who abandons a search for substantially equivalent employment, forfeits the right to backpay. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231-32 (1982) (holding that an unemployed or underemployed claimant "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied"); *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989) ("A plaintiff may not simply abandon his job search and continue to recover back pay."); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003); *accord Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 309 (5th Cir. 2020); *Branch v. City of Brookshire*, No. H-16-1888, 2018 U.S. Dist. LEXIS 118796, at *9 (S.D. Tex. July 16, 2018) (plaintiff was not entitled to back pay when he only applied to one comparable position over a two-and-a-half year period). A plaintiff's "unilateral decision that [her] job-seeking efforts would be futile does not absolve [her] of [her] duty to mitigate damages." *Powers*, 951 F.3d at 309; *accord Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1579 (5th Cir. 1989). "[T]he stress and/or hesitance to seek other work caused by an adverse employment action" does not relieve a plaintiff of her duty to seek other employment. *Skaggs v. Van Alstyne Indep. Sch. Dist.*, No. 4:16-CV-00227-CAN, 2017 U.S. Dist. LEXIS 2490, at *60 (E.D. Tex. Jan. 8, 2017).

Texas state law similarly holds that a plaintiff "forfeits his right to backpay if he refuses to accept or keep a job substantially equivalent to the one from which he was terminated." *Basic Capital Mgmt. v. Phan*, No. 05-00-00147-CV, 2001 Tex. App. LEXIS 5401, at *20 (Tex. App.—Dallas Aug. 9, 2001, pet. denied) (citing *Ford Motor Co.*, 458 U.S. 219).

Similarly, once an employer proves that an employee has made no efforts to obtain comparable work, the employer does not have to establish the availability of such work.  In general, to succeed on the affirmative defense of mitigation of damages with respect to back pay, an employer is required to "show not only that the plaintiff-appellant failed to use reasonable care and diligence, but that there were jobs available which appellant could have discovered and for which she was qualified." *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972); *see also Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988) ("To meet this burden, it has been consistently held that an employer must demonstrate that comparable work was available and the claimant did not seek it out.").  However, in *Sellers* the Fifth Circuit announced an exception to this general rule, stating that "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment." *Id.*  Courts that have applied the *Sellers* exception have done so when a plaintiff makes no attempts to find substantially equivalent employment after a certain date. *See, e.g.*, *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 309 (5th Cir. 2020); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394 (5th Cir. 2003); *Mejia v. Ayala*, No. 3:21-CV-0587-D, 2022 U.S. Dist. LEXIS 153828, at *4 (N.D. Tex. Aug. 26, 2022); *Skaggs v. Van Alstyne Indep. Sch.*

*Dist.*, No. 4:16-CV-00227-CAN, 2017 U.S. Dist. LEXIS 2490, at *58-61 (E.D. Tex. Jan. 8, 2017).[29]

This is the standard under Texas state law, too: "The general rule as to mitigation of damages in breach of employment suits is that the discharged employee must use reasonable diligence to mitigate damages by seeking other employment." *Gulf Consol. Intern., Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex. 1983). "[O]nce a discharged employee's failure to exercise reasonable diligence has been established by the employer, the employer has no additional burden to prove (1) what the employee could have earned by the exercise of reasonable diligence … or (2) whether the employee could have secured other employment had he tried." *Laredo v. Rodriguez*, 791 S.W.2d 567, 572 (Tex. App.—San Antonio 1990, writ denied).

Here, the evidence is undisputed that Plaintiff made a paltry effort, at best, to obtain substantially equivalent employment between August 11, 2017 and March 2018. She called three insurance agencies in Colorado over a two month period in the fall of 2017. Tr. (Day 3) at 55; Tr. (Day 5) (Kovner). And she was actually appointed with a life insurance company in March of

---

[29] The rule of orderliness does not prohibit this Court from applying the exception first laid out in *Sellers*. The rule of orderliness only applies when a latter decision "overturns" or is in "conflict" with an earlier decision. *See In re Levy*, 52 F.4th 244, 247-48 (5th Cir. 2022) (rule of orderliness does not apply when there is no conflict); *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). When, as here, precedents can be reconciled, the rule of orderliness actually prohibits "second-guess[ing]" the latter precedent. *Odle v. Flores*, 899 F.3d 342, 343 (5th Cir. 2017); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. City of Lubbock*, 542 F. Supp. 3d 465, 481 n.8 (N.D. Tex. 2021) ("The Court does not invoke the rule of orderliness because it has identified distinctions between *Allstate* and *Okpalobi* and has attempted, as it must, to reconcile the two opinions."). *Sellers* does not overturn or conflict with *Sparks*. Indeed, it states the same general rule laid out in *Sparks* before setting forth the exception for plaintiffs who make *no* efforts to obtain substantially equivalent employment. 839 F.2d at 1139; *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394 (5th Cir. 2003). *Sellers* simply, and permissibly, recognized a judicially-created-exception to a judicially-created rule. *See Davis v. United States*, 564 U.S. 229, 248 (2011); *Williams v. Homeland Ins. Co.*, 18 F.4th 806, 821 n.2 (5th Cir. 2021) (Ho, J., concurring).

2018 but never worked for them.  Tr. (Day 3) at 280; D-109.  After March 2018, she never looked or applied for a job in the insurance industry ever again.  In fact, she let her insurance license lapse at the end of 2018.  Tr. (Day 3) at 286; D-111.  By March 2018, at the latest, Plaintiff abandoned any search for substantially equivalent employment and therefore forfeited the right to backpay as a matter of law.  Defendants are entitled to judgment as a matter of law on Plaintiff's federal- and state-law backpay claims after March 2018 because of a failure to mitigate damages.[30]

## VII.   DEFENDANTS' RENEWAL AND RESTATEMENT OF THEIR MOTIONS FOR SUMMARY JUDGMENT AND OBJECTION TO THE COURT'S ORDERS DENYING THEM.

In *Ortiz v. Jordan*, the United States Supreme Court held that an order denying summary judgment on sufficiency-of-the-evidence grounds is not appealable after trial unless it is raised anew in a post-trial motion.  562 U.S. 180, 189-92 (2011).  In *Dupree v. Younger*, the Supreme Court held that a party whose summary judgment motion is denied on a pure legal issue does not have to raise the issue anew in a post-trial motion.  598 U.S. 729, 143 S. Ct. 1382, 1387 (2023).  "[B]ecause the line between factual and legal questions can be 'vexing' for courts and litigants," Defendants renew their previously filed summary judgments that the Court denied "out of an abundance of caution."  *Id.* at 1390-91.

### A.   Defendants Are Entitled To Judgment As A Matter Of Law On The Commission Exemption

For the reasons set forth in Defendants' motion for summary judgment based on the "commission exemption" set forth in section 207(i) of the FLSA (ECF Nos. 117, 151), which is fully incorporated herein, the Court should enter judgment in Defendants' favor as a matter of law.

---

[30] In addition to showing Plaintiff's complete failure to seek substantially equivalent employment after that date, Defendants also showed, as a matter of law, that substantially equivalent employment was available.  *See* Tr. (Day 5) (Kovner).

Section 207(i) provides an exemption from overtime requirements for any commissioned employee of "a retail or service establishment," where (1) the worker's "regular rate of pay" exceeds one and one-half times the FLSA applicable minimum wage, and (2) "more than half of his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). As demonstrated in Defendants' motion (ECF No. 117) and supporting reply brief (ECF No. 151), all of the elements of the commission exemption were satisfied and apply in this case. The Court's denial of the motion constitutes error for the reasons set forth in Defendants' motion and reply. Defendants, therefore, renew and restate their motion for summary judgment on the commission exemption and object to the Court's order (ECF No. 204) denying it.

**B.      Defendants Are Entitled To Judgment As A Matter Of Law Based On The Administrative, Highly Compensated, And Executive Exemptions Under The FLSA**

For the reasons set forth in Defendants' motion for summary judgment based on the on the administrative, highly compensated, and executive exemptions under the FLSA (ECF Nos. 122, 149), which is fully incorporated herein, the Court should enter judgment in Defendants' favor as a matter of law.

Defendants moved for summary judgment pursuant to the "administrative," "highly-compensated," and "executive" exemptions to the FLSA's overtime requirements. Defendants' motion (ECF No. 122) and supporting reply brief (ECF No. 149) demonstrated that the elements of these three exemptions are satisfied in this case and that Plaintiff is exempt from the FLSA's overtime requirements based on the exemptions. Plaintiff did not dispute that she satisfied the majority of the elements of these three exemptions, challenging only the question of whether she was paid compensation that satisfies the exemptions' "salary basis" test. *See* ECF No. 127.

Defendants showed, through record evidence and expert actuarial analysis, that Plaintiff's compensation indeed satisfied the salary basis test.  In addition, Defendants showed alternatively that the salary basis regulation was invalid because it conflicts with the statute and exceeds the regulatory authority of the Department of Labor.  *See* ECF Nos. 122, 149.  The Court's denial of Defendants' motion constitutes error for the reasons set forth in the motion and reply.  Defendants, therefore, restate and renew their motion for summary judgment on the administrative, highly-compensated, and executive exemptions and object to the Court's order (ECF No. 204) denying it.

### C.    Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiff's Overtime Claim

For the reasons set forth in Defendants' motion for summary judgment on Plaintiff's FLSA overtime claim (ECF Nos. 121, 144), which is fully incorporated herein, the Court should enter judgment in Defendants' favor as a matter of law on Plaintiff's claim for unpaid overtime.  As Defendants' motion showed, Plaintiff is not entitled to recover overtime damages in this case.  The Court's denial of Defendants' motion constitutes error for the reasons set forth in the motion and reply.  Defendants, therefore, restate and renew their motion for summary judgment (ECF Nos. 121, 144) and object to the Court's order (ECF No. 204) denying it.

### D.    Defendants Are Entitled To Judgment As A Matter Of Law On Plaintiff's Claim For Punitive Damages For Her FLSA Retaliation Claim.

For the reasons set forth in Defendants' motion for summary judgment on certain damages claims (ECF Nos. 116, 143), which is fully incorporated herein, the Court should enter judgment in Defendants' favor as a matter of law on Plaintiff's claim for punitive damages in connection with her FLSA retaliation claim.  As Defendants' motion showed, punitive damages should not be available in such claims.  The Court's denial of Defendants' motion constitutes error for the reasons set forth in the motion and reply.  Defendants, therefore, restate and renew their motion

for summary judgment (ECF Nos. 116, 143) and object to the Court's order (ECF No. 204) denying it.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By: _/s/ Julie A. Springer_
    Julie A. Springer
    Texas Bar No. 18966770
    jspringer@wshllp.com
    Sara E. Janes
    Texas Bar No. 24056551
    sjanes@wshllp.com
    Matt C. Wood
    Texas Bar No. 24066306
    mwood@wshllp.com

**ATTORNEYS FOR TEXAS FARM BUREAU DEFENDANTS**

**CARLTON FIELDS, P.A.**
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, D.C.  20007-5208
202.965.8100
202.965.8104 fax

By: _/s/ Markham R. Leventhal_
    Markham R. Leventhal
    mleventhal@carltonfields.com

Aaron S. Weiss
Irma Reboso Solares
Stephanie A. Fichera
**CARLTON FIELDS, P.A.**
2 MiamiCentral
700 N.W. 1st Avenue, Suite 1200
Miami, Florida 33136
305.530.0050
305.530.0055 fax
aweiss@carltonfields.com
isolares@carltonfields.com
sfichera@carltonfields.com

Cathleen Bell Bremmer
**CARLTON FIELDS, P.A.**
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
813.229.4326
813.229.4133 fax
cbell@carltonfields.com

**ATTORNEYS FOR SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐   U.S. Mail, First Class
☐   Certified Mail
☐   Facsimile
☐   Federal Express
☐   Hand Delivery
☒   ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants)

on this 14th day of May, 2024, to wit:

John Eddie Williams
Brian A. Abramson
Sean M. McCarthy
WILLIAMS HART BOUNDAS EASTERBY, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713.230.2200
713.643.6226 fax
jwilliams@whlaw.com
babramson@whlaw.com
smccarthy@whlaw.com

Kelly E. Cook
Warren A. Berlanga
WYLY & COOK PLLC
4101 Washington Avenue, 2nd Floor
Houston, Texas 77007
713.236.8330
713.863.8502 fax
kcook@wylycooklaw.com
wberlanga@wylycooklaw.com

Avi Moshenberg
Nick Lawson
LAWSON & MOSHENBERG, PLLC
801 Travis Street, Suite 2101 #838
Houston, Texas 77002
832.280.5670
avi.moshenberg@lmbusinesslaw.com
nick.lawson@lmbusinesslaw.com

William B. Thomas
William King
MCDOWELL HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
713.337.5580
713.337.8850 fax
william.thomas@mhllp.com
william.king@mhllp.com

ATTORNEYS FOR PLAINTIFFS

/s/ Julie A. Springer
Julie A. Springer